## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

United States of America,

           Plaintiff,

     v.

Elfred William Petruk,

           Defendant.

**MEMORANDUM OPINION
AND ORDER**
Criminal No. 16-285 ADM/LIB
Civil No. 20-2046 ADM

_____

Thomas M. Hollenhorst, Assistant United States Attorney, Minneapolis, MN, on behalf of
Plaintiff.

Elfred William Petruk, pro se.

_____

## I.  INTRODUCTION

This matter is before the undersigned United States District Judge for a ruling on

Defendant Elfred William Petruk's ("Petruk") Motion Under 28 U.S.C. § 2255 to Vacate, Set

Aside, or Correct Sentence [Docket No. 198][1] ("2255 Motion").[2]  Petruk has also submitted an

application to proceed in forma pauperis [Docket No. 200].  For the reasons stated below, the

2255 Motion is denied, and the application to proceed in forma pauperis is denied as moot.

## II.  BACKGROUND

On September 20, 2016, police arrested Petruk in North Branch, Minnesota, and seized

over 800 grams of methamphetamine from the engine compartment of his Chrysler 300 vehicle.

At the time of his arrest, Petruk was on supervised release for a federal conviction for corruptly

---

[1] All citations are to the criminal case docket.

[2] Petruk has filed several documents and letters in support of his § 2255 Motion.  See
Docket Nos. 199, 201, 203–07, 212–14, 219.  The Court has considered all of these submissions
when ruling on the § 2255 Motion.

attempting to obstruct an official proceeding in 2013.  See United States v. Petruk, Criminal No. 13-165 SRN/LIB (D. Minn.).  In October 2016, Petruk was charged by Indictment with one count of conspiracy to distribute 500 grams or more of a methamphetamine (Count 1) and one count of possession with intent to distribute 500 grams or more of methamphetamine (Count 2), in violation of § 841(a)(1) and (b)(1)(A).  Indictment [Docket No. 11].

In November 2016, Petruk's appointed counsel filed a dozen pretrial motions on his behalf, including a motion to suppress evidence seized while executing four search warrants issued in Minnesota and Wisconsin.  See Mot. Suppress [Docket No. 28].  Three of the challenged warrants were GPS tracking warrants for vehicles used by Petruk, and the fourth authorized the search of Petruk's Chrysler 300 where the methamphetamine was found.  Id.  Petruk argued the warrants lacked probable cause because the search warrant affidavits included vague information from unreliable confidential informants.  See Def.'s Mem. Supp. Mot. Suppress [Docket No. 43] at 9–13.  Following a suppression hearing, United States Magistrate Judge Leo I. Brisbois issued a 45-page Report and Recommendation (R&R) [Docket No. 45] rejecting Petruk's arguments and recommending that the motion to suppress be denied.  The Honorable Patrick J. Schiltz of this district court adopted the R&R after ruling on objections by Petruk.  See Order, Apr. 20, 2017 [Docket No. 57].  The case was assigned to this Court for trial and subsequent proceedings.

On June 12, 2017, after a four-day trial, a jury found Petruk guilty of both counts in the Indictment.  Verdict [Docket No. 121].  Petruk was sentenced on December 13, 2017.  See Min. Entry [Docket No. 171].  At the sentencing hearing, the Court heard testimony and received exhibits offered by the Government to show that Petruk had attempted to solicit false testimony

and statements before and after trial.  Sentencing Tr. [Docket No. 179] at 9–54.  In calculating

Petruk's offense level, the Court applied a 2-point enhancement for obstruction of justice, a

two-point enhancement for possession of a firearm in connection with a drug trafficking offense,

and a two-point enhancement for Petruk's leadership role in the drug trafficking conspiracy.  Id.

at 70–72; U.S.S.G. §§ 3C1.1, 2D1.1(b)(1), 3B1.1(c).  The Court also determined Petruk was a

career criminal based on a prior conviction for felony fifth-degree assault in Minnesota and a

prior felony drug conviction.  Sentencing Tr. at 65–66, 71, 75.  Petruk's total offense level of 40

and Category VI criminal history resulted in a sentencing guidelines range of 360 months to life.

Id. at 72-74.  The Court sentenced Petruk to concurrent terms of 372 months on Counts 1 and 2,

and a consecutive 30-month term for his supervised release violation.  Sentencing J. [Docket No.

172] at 5; Sentencing J. [Criminal No. 13-165, Docket No. 223] at 2.

Petruk appealed the pretrial denial of his motion to suppress and the post-trial revocation

of his supervised release.  See United States v. Petruk, 929 F.3d 952 (8th Cir. 2019).  The Eighth

Circuit affirmed, holding that the four search warrants were supported by probable cause because

the confidential informants had provided reliable information in the past, and because the

information they supplied here had been independently corroborated by law enforcement.  Id. at

959–61.  The Supreme Court denied Petruk's petition for a writ of certiorari in November 2019.

See Notice S. Ct. [Docket No. 193].

On September 23, 2020, Petruk timely filed this 2255 Motion seeking to vacate his

conviction and sentence.  Petruk asserts 47 claims alleging ineffective assistance of counsel,

procedural and substantive errors, and misconduct by the Government.

## III. DISCUSSION

### A.  Legal Standards

#### 1.  28 U.S.C. § 2255

Persons in federal custody are provided a limited opportunity to collaterally attack the constitutionality, jurisdictional basis, or legality of their sentence under 28 U.S.C. § 2255.  See United States v. Addonizio, 442 U.S. 178, 185 (1979).  "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and, if uncorrected, would result in a complete miscarriage of justice."  Walking Eagle v. United States, 742 F.3d 1079, 1081–82 (8th Cir. 2014) (quoting United States v. Apfel, 97 F.3d 1074, 1076 (8th Cir. 1996)).

Section 2255 generally "may not be used to relitigate matters decided on direct appeal." Sun Bear v. United States, 644 F.3d 700, 702 (8th Cir. 2011) (citing Davis v. United States, 417 U.S. 333, 346–47 (1974)); see also United States v. Shabazz, 657 F.2d 189, 190 (8th Cir. 1981) (per curiam) ("[C]laims which were raised and decided on direct appeal cannot be relitigated on a motion to vacate pursuant to 28 U.S.C. § 2255.").  Additionally, with the exception of ineffective assistance of counsel claims that are normally deferred until post-conviction proceedings, claims that could have been but were not raised on appeal are procedurally barred. See Lefkowitz v. United States, 446 F.3d 788, 790 (8th Cir. 2006) (holding defendant's claim raised in his § 2255 motion was "procedurally defaulted" because the claim "could have been but was not raised on direct appeal").

#### 2. Ineffective Assistance of Counsel

"To establish ineffective assistance of counsel within the context of section 2255 . . . a

4

movant faces a heavy burden." Apfel, 97 F.3d at 1076.  A defendant must show that "(1) his attorney's performance failed to conform to the degree of skill, care, and diligence of a reasonably competent attorney; and (2) he was prejudiced by the attorney's poor performance." Pierce v. United States, 686 F.3d 529, 531 (8th Cir. 2012) (citing Strickland v. Washington, 466 U.S. 668 (1984)).  The defendant must overcome the "strong presumption" that his counsel provided reasonable assistance.  Id.  Overcoming that presumption requires a showing that, "in light of all the circumstances, the lawyer's performance was outside the range of professionally competent assistance."  Cox v. Norris, 133 F.3d 565, 573 (8th Cir. 1997).  If the defendant can show his counsel's performance was inadequate, he then must show that, but for the deficient performance, the outcome of his case would have been different.  Id.

## B.  Petruk's Claims

Petruk's claims can be grouped into 16 general categories.  Each category is addressed below.

### 1.  Confidential Informants (Claims 1, 11, 26, 33, 39, 40, and 43)

Petruk argues his Fourth Amendment rights were violated and counsel's performance was ineffective because confidential informants ("CI's") were improperly used in his case. Petruk contends the information supplied by the CIs should have been omitted from the search warrant affidavits because the CIs had not signed a statement or affidavit.  Mot. at 4, 22, 45 (Claims 1, 11, 26).[3]  This argument fails because the law does not require a signed statement or affidavit from a CI before law enforcement may use the information provided by an informant.

---

[3]  Page number references to the 2255 Motion are to the page numbers in the CM/ECF banner at the top of the page.

5

Rather, the "core question" in assessing information supplied by a CI is "whether the information is reliable." United States v. Williams, 10 F.3d 590, 593 (8th Cir. 1993). "Information may be sufficiently reliable to support a probable cause finding if the person providing the information has a track record of supplying reliable information, or if it is corroborated by independent evidence." Id. Counsel was not ineffective for not objecting to the lack of a signed statement or affidavit from the CIs.

Petruk further claims the four search warrants were improperly issued because they included false information provided by the CIs. Mot. at 22, 45, 55, 66, 69 (Claims 11, 26, 33, 40, and 43). There is no evidence in the record to suggest that the information the CIs supplied was false.

Petruk also claims that two of the five CIs who were mentioned in the search warrant affidavits have since provided statements claiming that they never provided police with information about Petruk. Mot. at 22, 57, 66, 69 (Claims 11, 33, 40, 43).[4] In support of this argument, Petruk has submitted statements purportedly signed by Robert Lund (CI #3) and Steve Ostman (CI #5) stating they have not spoken to law enforcement about Petruk. See Pro Se Exs. [Docket No. 201-2] at 7–8. These statements lack validity because they are not notarized or dated. Their authenticity is further called into doubt by Petruk's history of attempting to use false evidence to exonerate himself in this case and in his 2013 federal case. The unnotarized, undated statements are also contradicted by the law officers' sworn statements in the search warrant affidavits, and by the testimony of Duluth Police Investigator Scott Williams

---

[4] CI #3 is mentioned in all four of the warrants. CI #5 is only mentioned in the search warrant for the Chrysler 300. Mot. Hr'g Exs. 1–4.

("Investigator Williams").  Investigator Williams testified under oath at the suppression motion hearing that the CIs referenced in the search warrant affidavits had provided information about Petruk.  Mot. Hr'g Tr. [Docket No. 78] at 27.  Moreover, even if Petruk could show that the statements he has produced are true and authentic, the search warrants would still be valid because if the references to CI #3 and CI #5 were removed from the search warrant affidavits, the remaining information would be sufficient to establish probable cause for the warrants.

Petruk further argues his trial attorney was ineffective for not requesting a hearing under Franks v. Delaware, 438 U.S. 154 (1978).  Petruk contends that his counsel should have requested a Franks hearing because law enforcement officers lied in their search warrant affidavits when they stated that CIs had provided them with information.  Mot. at 45, 66 (Claims 26, 40).  To be entitled to a Franks hearing, a defendant must make "a substantial preliminary showing" not only that the affidavit contained false information, but that the inaccuracies were the result of "deliberate falsehood or reckless disregard for the truth" and were "necessary to the finding of probable cause."  Franks, 438 U.S. at 155–56, 171; see also United States v. Mathison, 157 F.3d 541, 547–48 (8th Cir. 1998).  "A mere allegation standing alone, without an offer of proof in the form of a sworn affidavit of a witness or some other reliable corroboration, is insufficient to make the difficult preliminary showing."  Mathison, 157 F.3d at 548.  A Franks hearing is appropriately granted only in "very limited circumstances."  United States v. Ozar, 50 F.3d 1440, 1445 (8th Cir. 1995).  Here, the record lacks reliable corroboration to support Petruk's allegation that the sworn statements in the search warrant affidavits included deliberately false information.  Counsel was not ineffective for failing to request a Franks hearing.

Petruk also claims his constitutional rights were violated because the Government did not produce any of the CIs at trial. Mot. at 64–65 (Claim 39). Petruk argues that when litigating the suppression motion, the Government claimed that law enforcement had obtained information from five CIs, but this claim was "false and not true" because the CIs were never produced. Id. at 65. As stated earlier, there is no reliable evidence in the record to support Petruk's allegation that CIs did not supply law enforcement with information about Petruk. Additionally, this claim of Government misconduct is procedurally barred because it was not raised on appeal. Further, there is no requirement to produce CIs at the suppression hearing or at trial.

### 2. Warrants (Claims 2, 21, 22, 28, 29, 38, 41, 42, and 46)

Petruk raises several claims about the processing and execution of the search warrants. He first contends that counsel should have challenged the validity of two GPS warrants issued in Wisconsin for two of his vehicles. Petruk contends the Wisconsin GPS warrants were "magically produced" and "doctored up," and that his counsel should have contested the validity of the warrants and the judge's signature on the warrants. Mot. at 5, 39–40, 47, 49; Pro Se Supplement [Docket No. 207] at 2; Letter [Docket No. 212] at 1–2 (Claims 2, 21, 22, 28, and 29). The Eighth Circuit has affirmed the validity of the Wisconsin GPS warrants, and there is no evidence to support Petruk's allegation that the Wisconsin GPS warrants were "doctored up."

Petruk also argues counsel was ineffective for failing to challenge the Wisconsin GPS warrants on the grounds that the warrants did not specify when or how law enforcement was to attach the GPS devices, that the tracking devices were improperly installed in Wisconsin by Minnesota law enforcement officers acting outside of their jurisdiction, and that the devices were not identified by serial number and may not have been "owned" by Wisconsin authorities. Mot.

8

at 47–49; Pro Se Supplement at 1–4 (Claims 28 and 29). The claims lack legal support, and Petruk's counsel was not ineffective for not raising them.

Petruk argues his attorney was ineffective for not addressing each warrant independently. Mot. at 67–68 (Claims 41 and 42). This argument fails because counsel challenged all four of the warrants during the pretrial proceedings, and the Eighth Circuit upheld the validity of each warrant. Petruk cannot show that a different result would have been reached had counsel discussed each warrant separately.

Petruk also claims his attorney misstated the law by arguing that a court should look outside the four corners of the search warrant affidavit to assess whether officers relied on the warrant in good faith. Mot. at 63 (Claim 38); Mem. Supp. Mot. Suppress at 25. This claim lacks merit because counsel accurately stated the law. See United States v. Dickerman, 954 F.3d 1060, 1065 (8th Cir. 2020) ("[W]hen assessing the officer's good faith reliance on a search warrant . . . , we can look outside the four corners of the affidavit and consider the totality of the circumstances, including what the officer knew but did not include in the affidavit.").

Petruk further contends the Indictment was invalid because the grand jury testimony inaccurately stated that evidence was obtained from GPS tracking warrants issued in Minnesota, when the evidence was actually obtained from GPS tracking warrants issued in Wisconsin. Mot. at 40, 72 (Claims 22 and 46). Assuming without deciding that Petruk's description of the grand jury testimony is accurate, the claim fails because Petruk's conviction cured any alleged defects in the indictment process. See United States v. Mechanik, 475 U.S. 66, 70 (1986) ("[T]he petit jury's subsequent guilty verdict means not only that there was probable cause to believe that the defendants were guilty as charged, but also that they are in fact guilty as charged beyond a

reasonable doubt.  Measured by the petit jury's verdict, then, any error in the grand jury proceeding connected with the charging decision was harmless beyond a reasonable doubt.").

### 3. DNA Evidence (Claim 3)

Petruk claims counsel was ineffective for not obtaining DNA evidence from the previous owners of the Chrysler 300 or from Robert Lund ("Lund").  Mot. at 7.  Petruk argues these individuals may have been responsible for placing the methamphetamine inside the Chrysler 300.  The claim fails because even if counsel had obtained DNA from these individuals, it would not have led to a different outcome.  The previous owners traded the Chrysler 300 to a car dealership three months before the drugs were seized.  A salesman at the dealership told Special Agent Steven Foreman ("Agent Foreman") that the car's engine compartment had been cleaned before the vehicle was sold to Petruk.  Pro Se Exs. [Docket No. 201-2] at 1-2.  When officers conducted surveillance on Petruk, they saw him look under the hood and examine the engine of the Chrysler 300 numerous times.  These circumstances rebut Petruk's theory that the prior owners may have placed the drugs in the car before trading it.

Petruk's theory that Lund may have hidden the drugs in the Chrysler 300 also lacks merit.  In the weeks before trial, potential defense witness Samantha Mitchell ("Mitchell") told a defense investigator that on September 19, 2016, she saw Lund place a gift-sized package under the hood of the Chrysler 300.  See Pro Se Exs. [Docket No. 201-2] at 4.  However, just before Mitchell was to testify at trial, she admitted to defense counsel that she had lied to the investigator and that she had not seen Lund place anything in the car.  Counsel Aff. [Docket No. 218-1] ¶ 15.  Mitchell also stated that Petruk had promised her a pound of methamphetamine in return for her false testimony.  Id.

Petruk has not shown that counsel was ineffective for not obtaining DNA samples from the prior owners of the Chrysler 300 or from Lund, or that the outcome would have been different had DNA samples been obtained.

### 4. Jury Selection (Claim 4)

Petruk claims the Court should have stricken Juror No. 2 for cause after the juror commented during voir dire, "[M]y blood is boiling right now."  Mot. at 8; Voir Dire Tr. [Docket No. 142] at 45.  The Court did not err in not striking Juror No. 2 for cause, because the record does not support an inference that Juror No. 2 was biased against Petruk.  Upon questioning by the Court, the juror stated, "I'll do my best," and acknowledged that he would be "fair and impartial to the best of [his] ability."  Voir Dire Tr. at 48–49.

Petruk also claims counsel was ineffective for failing to strike Juror No. 2 after Petruk asked him to do so.  Mot. at 8.  The decision to leave a prospective juror on the panel generally does not support an ineffective assistance of counsel claim.  See Miller v. Francis, 269 F.3d 609, 615 (6th Cir. 2001) ("Counsel's actions during voir dire are presumed to be matters of trial strategy."); Williams-Bey v. Trickey, 894 F.2d 314, 316 (8th Cir. 1990) ("Matters of trial strategy and tactics generally do not constitute ineffective assistance of counsel, unless a tactical choice is wholly without reason.").  The record does not show that counsel's performance was ineffective or that counsel's decision to leave Juror No. 2 on the panel prejudiced Petruk's case.

### 5. Potential Defense Witnesses (Claims 5, 9, 13, 14, 24, and 25)

Petruk asserts several claims about counsel's handling of potential defense witnesses.  First, Petruk argues counsel should have interviewed the former owners of the Chrysler 300.  Mot. at 13 (Claim 5).  The previous owners were interviewed by Agent Foreman, and both

denied placing drugs under the hood of the car.  Pro Se Exs. [Docket No. 201-2] at 2.  On these facts, Petruk cannot show that counsel was ineffective or that he was prejudiced by counsel's decision not to interview these individuals.

Also, Petruk claims his counsel was ineffective for not locating and interviewing the CIs and calling them at trial.  Mot. at 17 (Claim 9).  Counsel did have an investigator interview Lund (CI #3) prior to trial.  See Pro Se Exs. [Docket No. 201-2] at 6.  In that interview, Lund provided incriminating evidence against Petruk that was consistent with the information Lund had earlier provided to police.  Id.  Counsel was not ineffective for failing to call Lund as a witness at trial. With respect to the other CIs, all four provided incriminating evidence against Petruk, and counsel was not ineffective for choosing not to interview them.  Petruk also contends he had a constitutional right to face his accusers.  Mot. at 17.  However, Petruk's Sixth Amendment right to confrontation was not violated because none of the CIs were called as witnesses and none of the information they provided was introduced at trial.

Petruk makes several claims about Ashley Martin ("Martin"), who testified before the grand jury about several of her drug transactions with Petruk.  Mot. at 24 (Claim 13).  Petruk claims that Martin told the prosecutors days before the trial that she had lied during her grand jury testimony.  Id.  To the extent this is true, Petruk cannot show prejudice because Martin was not called as a witness at trial.  Petruk also claims counsel was ineffective for not objecting to the introduction of several Government exhibits at trial because they related to Martin.  Id. Although the exhibits pertained to evidence seized from Martin's residence and vehicles, there was sufficient evidence to link the exhibits to Petruk.  See, e.g., Trial Tr. Vol. II [Docket No. 144] at 183 (investigator testimony that GPS tracking data showed Petruk's vehicle had been at

Martin's property in September 2016).  Given the exhibits' relevance to Petruk, the Court would have overruled counsel's objections to their admission.  Accordingly, Petruk cannot show he was prejudiced by counsel's lack of objection to the Martin-related exhibits.

Petruk further claims counsel was ineffective for not attempting to locate the owner of a pink purse containing methamphetamine that was seized from Gino Carter's ("Carter") residence, and for not objecting to the admission of evidence regarding the pink purse.  Mot. at 25 (Claim 14).  Investigators had seen Petruk visit Carter's property and tracked his vehicles there on multiple occasions.  Trial Tr. Vol. I [Docket No. 143] at 128–30.  The day after Petruk was arrested, Carter's residence was searched and police seized scales, drug packaging materials, and the pink purse.  Id. at 130–33.  Petruk argues he was entitled to know who owned the purse and to put that person on the stand to ask where the drugs had come from.  Petruk also contends counsel should have interviewed Carter about the purse.  These claims fail because Petruk cannot show prejudice from counsel's decision not to object to the admission of this evidence or locate the owner of the purse.

Petruk also contends counsel was ineffective for including witnesses on the defense witness list without first discussing their expected testimony with Petruk and without ever intending to call them.  Mot. at 43 (Claim 24).  Petruk has not shown any prejudice resulting from this conduct.

Petruk further claims that when the United States Marshals transported Lund and Mitchell to the courthouse in preparation for their testimony at trial, Petruk's counsel intentionally had the Marshals transport them in the same van and place them in adjoining cells so that Mitchell would be intimidated by Lund and would not testify on Petruk's behalf.  Mot. at

44 (Claim 25).  There is no evidence to support this allegation.

### 6.  Petruk's Arrest (Claim 6)

Petruk argues counsel was ineffective for failing to argue that he was illegally arrested.
This claim is baseless because counsel did argue that Petruk was illegally arrested and searched
without a valid warrant.  See Mot. Suppress at 2-3; Def.'s Mem. Supp. Mot. Suppress at 27.

### 7.  Seizure of Chrysler 300 (Claims 7, 8, and 15)

Petruk claims the seizure of the Chrysler 300 was improper because police failed to
obtain a warrant to enter private property and seize the car.  Mot. at 15-16 (Claims 7 and 8);
Letter [Docket No. 197]; Am. Mot. [Docket No. 203]; Letter [Docket No. 205].  Prior to his
arrest, Petruk drove the Chrysler 300 to an auto salvage yard in North Branch.  Trial Tr. Vol. I at
72, 91, 126, 138; Trial Tr. Vol. II at 315–18, 334.  Police arrested Petruk there and drove his car
from the salvage yard to the North Branch Police Department.  Trial Tr. Vol. II at 316–18.
Petruk argues that the salvage yard property included a private residence, and that the Chrysler
300 was parked in the curtilage of the residence.  Petruk contends the police improperly
trespassed onto the private property without a warrant to seize the vehicle.  The record
contradicts Petruk's claim that the car was on private property.  Even if it had been, Petruk has
not shown that he has standing to contest the entry onto the property.  Counsel was not
ineffective for failing to argue that the Chrysler 300 was improperly seized from private
property.        Petruk also claims law enforcement improperly held and sold the Chrysler 300.
Mot. at 26 (Claim 15).  These claims are not relevant to the validity of Petruk's conviction and
sentence.

**8. Sentencing (Claims 10, 17, 18, 23, 31, 34, and 37)**

Petruk raises numerous claims challenging his sentence. He argues the Court erred in applying a two-level enhancement for obstruction of justice under U.S.S.G. § 3C1.1. Mot. at 18-21 (Claim 10), 41–42 (Claim 23). This challenge fails because the testimony and exhibits produced at the sentencing hearing provided ample evidence to support the obstruction of justice enhancement. See Sentencing Tr. at 9–34; Gov't Ex. List [Docket No. 174, Attach. 1] at Exs. 100, 102A, 110A, 111A, 150, 301, 302, 400. The evidence showed that Petruk attempted to intimidate potential trial witnesses and to solicit false testimony and statements before and after trial.

Petruk also claims the Court improperly applied a two-level enhancement for possession of a firearm in connection with the drug trafficking offenses. Mot. at 29–31 (Claim 17). The firearm enhancement "creates a very low bar for the government to hurdle. If it is not clearly improbable that the firearm was connected to [the defendant's] drug activity, then the enhancement applies." United States v. Anderson, 618 F.3d 873, 882 (8th Cir. 2010) (internal quotation marks omitted). Here, the gun at issue had Petruk's DNA on it and was found in a safe containing drug paraphernalia and Petruk's vehicle records. Sentencing Tr. at 7–8; Gov't Ex. List at Exs. 35E, 35F, 35K, 73. On this record, it is not clearly improbable that Petruk used the firearm in connection with his drug trafficking activity.

Petruk claims the Court erred in applying a two-level enhancement for his role in the offense. Mot. at 58–59 (Count 34). This claim is rejected because the trial evidence established that Petruk was a leader in the drug trafficking conspiracy and exhibited control over others who were involved in the conspiracy. Gov't Ex. List at Exs. 93L, 93M.

Petruk also claims the Court erred in concluding he is a career offender.  He contends that his conviction for fifth-degree felony assault in Minnesota does not qualify as a "crime of violence" under the sentencing guidelines.  Mot. at 32–33 (Claim 18).  This claim fails as a matter of law.  See United States v. Peterson, No. 15-55, 2017 WL 3411948, at *2 (D. Minn. Aug. 9, 2017) (citing United States v. Yang, 799 F.3d 750, 756 (7th Cir. 2015) ("A conviction under [Minn. Stat. § 609.224, subd. 4] qualifies as a violent felony because it has as an element the use, attempted use, or threatened use of physical force against the person of another.") (internal quotations omitted)).

Petruk further argues the Presentence Investigation Report ("PSR") [Docket No. 152] should not have included past criminal history for charges that had been dismissed.  Mot. at 51 (Claim 31).  Petruk cannot show prejudice from counsel's failure to object to this information, as the Court did not rely on Petruk's dismissed charges when sentencing him.

Petruk also objects to his consecutive sentence for his supervised release violation.  Mot. at 62 (Claim 37).  The claim fails because the Court properly exercised its discretion in ordering the sentence to be served consecutively.  See U.S.S.G. 7B1.3 ("Any term of imprisonment imposed upon the revocation of probation or supervised release shall be ordered to be served consecutively to any sentence of imprisonment that the defendant is serving, whether or not the sentence of imprisonment being served resulted from the conduct that is the basis of the revocation of probation or supervised release.").

### 9.  Photographic Evidence (Claim 12)

Petruk claims the Government improperly obtained photographs of his parents' house by entering their land without permission, and that counsel was ineffective for failing to object to

the use of the photographs at trial.  Mot. at 23.  Assuming without deciding that the allegations

of trespass are true, Petruk has not shown he has standing to contest the matter.  He has also

failed to show any prejudice from the admission of the photographs.

### 10.  Telephone Evidence (Claim 16)

Petruk claims his counsel failed to object during trial to the admission of "illegally

obtained" messages from the cell phone Petruk had been talking on at the time he was arrested.

This claim fails because Petruk cannot show he was prejudiced by counsel's lack of objection.

Before and during trial, Petruk's counsel argued that the seizure of Petruk's cell phone was

improper.  See Letter [Docket No. 65]; Mot. Hr'g Tr. [Docket No. 78]; Trial Tr. Vol. II at

342–48.  The Court rejected the argument, and Petruk appealed the ruling without success.  See

Trial Tr. Vol. II at 348–63; United States v. Petruk, Case Nos. 17-3823, 17-3824, 2018 WL

1363968, at *60-63 (8th Cir. Mar. 8, 2018).  As such, Petruk cannot show the outcome of his

case would have been different had his counsel objected to the admission of the cell phone

messages.

### 11.  Request for New Counsel (Claim 19)

Petruk claims the Court should have granted his motion [Docket No. 47] for new counsel.

Mot. at 34–37.  Judge Brisbois denied Petruk's motion on March 10, 2017, and Judge Schiltz

affirmed after holding a hearing on the motion.  See Order [Docket No. 50]; Min. Entry [Docket

No. 58]; Order [Docket No. 59].  Petruk has not shown that the denial of the request was

improper.

### 12.  Grand Jury Tampering (Claim 20)

Petruk claims the Government violated his constitutional rights by "threatening and

17

intimidating" Michelle Clement ("Clement") when she testified before the grand jury.  To support his claim, Petruk points to Clement's statement at trial that she "tried to plead the Fifth [Amendment] on the stand and that didn't go well."  Trial Tr. Vol. III [Docket No. 145] at 437. This statement does not support a claim for grand jury tampering.  Additionally, the claim is procedurally barred because it was not raised on appeal.

### 13.  Discovery (Claims 27, 44, and 45)

Petruk asserts three discovery-related claims.  First, he claims counsel was ineffective in not providing him with discovery until four weeks before his trial.  Mot. at 46 (Claim 27). Second, he argues counsel was ineffective for not independently obtaining GPS tracking information for his three vehicles.  Mot. at 70 (Claim 44).  Third, he claims counsel did not provide him with discovery concerning this 2255 Motion.  Mot. at 71 (Claim 45).  Petruk has not shown that the outcome would have been different but for these alleged deficiencies in counsel's performance.

### 14.  Trial Performance (Claims 30, 31, and 32)

Petruk claims that counsel's performance at trial was deficient.  He first argues that counsel agreed to trial stipulations with the Government without Petruk's knowledge.  Mot. at 50 (Claim 30).  The record shows that the parties entered into a stipulation about the chemical analysis of the drug evidence, the processing of the DNA evidence, and other issues, and that these stipulations were discussed several times during the trial out of the presence of the jury. See Trial Tr. Vol. I at 33, 160, 162; Trial Tr. Vol. II at 401; Trial Tr. Vol. III at 408, 579; Trial Tr. Vol. IV [Docket No. 146] at 585, 592, 594.  During these discussions, Petruk never questioned or objected to the proposed stipulation.  Additionally, counsel's decision to stipulate

was part of a reasonable trial strategy, and Petruk has not shown that it prejudiced his case.

Petruk also claims counsel was ineffective for not asking the Court to give the jury a buyer-seller instruction. Mot. at 51 (Claim 31). The buyer-seller instruction is appropriate when the evidence indicates "a single transaction case involving small quantities of drugs consistent with personal use." United States v. Conway, 754 F.3d 580, 592 (8th Cir. 2014). The instruction is not appropriate where "the conspiracy involves large quantities of drugs and significant interaction between dealers and users over an extended period of time." Id. Here, the evidence established that Petruk possessed over 800 grams of methamphetamine and that he and his co-conspirators distributed the drugs on many occasions to several customers. See Trial Tr. Vol. III at 418–32, 450–52, 481, 501–05. As such, the buyer-seller instruction was not warranted and Petruk's counsel was not ineffective for not requesting it. Petruk also cannot show prejudice because the Court would have denied a request to give the buyer-seller instruction.

Also, Petruk claims counsel was ineffective for using a fable involving a scorpion and a frog during closing argument. Mot. at 51 (Claim 31). Petruk argues he was prejudiced because the scorpion "conspired" with a frog, and Petruk was also charged with conspiracy. Counsel did not compare Petruk to the scorpion or the frog. See Trial Tr. Vol. IV at 636–37. Rather, counsel was comparing the Government witnesses to the scorpion in the fable. Id. The argument did not prejudice Petruk, and he has not shown that the outcome would have been different had counsel not used the fable analogy.

Petruk further claims counsel was ineffective in his cross-examination of the Government's witnesses at trial. Mot. at 52–54 (Claim 32). Petruk lists several questions and

19

topics that he believes counsel should have addressed to the witnesses.  The trial transcript shows that Petruk's counsel effectively cross-examined the witnesses.  Additionally, there is no reason to believe the result of the trial would have been different had Petruk's suggested questions and topics been raised.

### 15.  Privileged Communications (Claim 35)

Petruk claims his counsel disclosed privileged attorney-client communications to the Government.  Mot. at 60.  There is no evidence in the record to support this allegation.

### 16.  Appellate Issues (Claims 36 and 47)

Petruk claims the Eighth Circuit Court of Appeals should have "publicized" the oral arguments in his direct appeal.  Mot. at 61 (Claim 36).  The oral arguments are publicly available.  See http://media-oa.ca8.uscourts.gov/OAaudio/2019/2/173823.MP3 (last accessed Feb. 23, 2021).

Petruk also claims the Eighth Circuit Court of Appeals lacked standing to address the legality of the GPS warrants issued in Wisconsin, and that the warrants should have been reviewed by the Seventh Circuit Court of Appeals.  Letter [Docket No. 206] at 1 (Claim 47). This claim fails because appeals from the United States District Court for the District of Minnesota are reviewed by the Eighth Circuit Court of Appeals.  See 28 U.S.C. § 1294(1) ("[A]ppeals from reviewable decisions of the district and territorial courts shall be taken to . . . the court of appeals for the circuit embracing the district . . . ."); 28 U.S.C. § 41 (providing that the Eighth Circuit Court of Appeals embraces the District of Minnesota).  Additionally, in federal prosecutions, challenges to state search warrants are evaluated under federal Fourth Amendment standards and not under state law.  United States v. Cote, 569 F.3d 391, 393 (8th

Cir. 2009).  Petruk's appeal concerning the Wisconsin GPS warrants was properly considered by the Eighth Circuit.

## IV. EVIDENTIARY HEARING

Petruk requests an evidentiary hearing to address the issues in his 2255 Motion.  See Sept. 28, 2020 Letter [Docket No. 205] at 1; Oct. 30, 2020 Letter [Docket No. 213] at 2; Pro Se Notice [Docket No. 214] at 2; Def.'s Reply [Docket No. 219] at 6.  An evidentiary hearing is not warranted, as the 2255 Motion and the files and record in this case conclusively show that Petruk is not entitled to § 2255 relief.  28 U.S.C. § 2255(b); Noe v. United States, 601 F.3d 784, 792 (8th Cir. 2010).

## V. CERTIFICATE OF APPEALABILITY

The Court may grant a certificate of appealability only where a defendant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Tiedeman v. Benson, 122 F.3d 518, 523 (8th Cir. 1997).  To make such a showing, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  Slack v. McDaniel, 529 U.S. 473, 484 (2000).  The Court finds it unlikely that another court would decide the issues raised in this 2255 Motion differently, or that any of the issues raised in Petruk's Motion would be debatable among reasonable jurists. Therefore, the Court declines to grant a certificate of appealability.

## VI. CONCLUSION

Based upon all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.   Defendant Elfred William Petruk's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence [Docket No. 198] is **DENIED**; and

2.      The application to proceed in forma pauperis [Docket No. 200] is **DENIED AS MOOT**.


**LET JUDGMENT BE ENTERED ACCORDINGLY.**

                                        BY THE COURT:


                                        _____s/Ann D. Montgomery_____
                                        ANN D. MONTGOMERY
                                        U.S. DISTRICT COURT

Dated:  February 26, 2021